UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROGRESSIVE DIRECT INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL RUEGER, et al.,<br><br>                    Defendants. | CASE NO. C19-1201JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Plaintiff Progressive Direct Insurance Company's ("Progressive") motion for default judgment, or in the alternative, summary judgment against Defendants Michael Rueger and Patricia Rueger. (Mot. (Dkt. # 12).) The motion is unopposed. (*See generally* Dkt.) The court has considered the motion, the record, and the applicable law. Being fully advised, the court GRANTS Progressive's motion.

//

ORDER - 1

## II.   BACKGROUND

On August 1, 2019, Progressive filed a complaint seeking a declaration that it does not owe Uninsured Motorist Bodily Injury ("UMBI") coverage to Mr. Rueger under Automobile Policy No. 71505242 ("the Policy"), which was in effect from December 24, 2016, to June 24, 2017.  (Compl. (Dkt. # 1) ¶¶ 3.30, 5.3-5.4, 6.2-6.3.)  Progressive maintains that it does not owe UMBI coverage to Mr. Rueger because Mr. Rueger breached his duties under the Policy in the case of an accident or loss and because he was solely at fault for the accident and failed to provide sufficient evidence under the Policy that another driver was involved.  (*See generally* Mancuso Decl. (Dkt. # 14) ¶ 6, Ex. 5[1] ("Policy").)

Progressive was unable to personally serve its complaint on Mr. Rueger or Ms. Rueger due to "the hostile nature of Defendants and their residence."  (*See* 10/15/19 Neal Decl. (Dkt. # 5) ¶¶ 3-9.)  Progressive sought and received the court's permission to serve Mr. Rueger and Ms. Rueger with copies of the summons and complaint by mail.  (*See* 10/25/19 Order (Dkt. # 6).)  Although Progressive served Mr. Rueger and Ms. Rueger by mail (*see* Aff. (Dkt. # 8) ¶ 3), they have not responded to the complaint (*see generally* Dkt.).  On January 30, 2020, the Clerk of the Court entered default against Mr. Rueger and Ms. Rueger.  (Dflt. Order. (Dkt. # 11) at 2.)  Nothing on the docket suggests that Mr. Rueger and Ms. Rueger intend to contest Progressive's complaint or appear before the court.  (*See generally* Dkt.)

//

---

[1] This exhibit is a copy of the Policy mentioned above.

On January 20, 2017, Mr. Rueger was driving on a highway in Maple Valley, Washington, when his 1999 Jeep Grand Cherokee hit a guardrail (Mancuso Decl. ¶ 4, Ex. 3 at 4-5),[2] causing an accident that sent him to the hospital (2/19/20 Neal Decl. (Dkt. # 13) ¶ 1, Ex. 1 ("Police Report") at 3). Mr. Rueger suffered serious injuries and underwent several surgeries because of the accident. (Mancuso Decl. ¶ 12, Ex. 11 ("Rueger Dep.") at 36:6-20.) Mr. Rueger was intoxicated during the accident and, on November 13, 2017, he pleaded guilty to driving under the influence with a blood alcohol concentration of .16. (2/19/20 Neal Decl. ¶ 3, Ex. 2 ("Plea").)

Progressive informed Mr. Rueger in May 2018 of a premium increase due to his fault in the accident. (Mot. at 8; *see* Mancuso Decl. ¶ 7, Ex. 6.) Mr. Rueger then told Progressive for the first time that another car had caused the accident. (Compl. ¶ 3.11; Mancuso Decl. ¶ 15.) In response, Progressive opened a UMBI claim to investigate a phantom car or hit-and-run incident. (Compl. ¶ 3.12; Mancuso Decl. ¶ 16.) Mr. Rueger sent photos of his Jeep to Progressive (Mancuso Decl. ¶ 8, Ex. 7) and stated under oath that another car had hit the side of his Jeep, causing him to swerve into the guardrail (Rueger Dep. at 20:3-6, 23:7-14). However, Progressive was unable to identify any damage to the Jeep that another driver could have caused. (Compl. ¶ 3.13; Mancuso Decl. ¶ 17.) Progressive sent several letters to Mr. Rueger asking for objective documentation to support his narrative and informing him that his lack of cooperation

//

---

[2] This citation refers to the page numbers provided by the court's electronic filing system ("ECF"). Unless stated otherwise, this order cites to the page numbers provided by ECF.

1  was impeding Progressive's investigation.  (Compl. ¶¶ 3.14-3.19, 3.24-3.25, 3.27-3.29;

2  Mancuso Decl. ¶ 9, Ex. 8 ("Letters").)  Mr. Rueger refused to allow Progressive's experts

3  to examine his Jeep in person (Compl. ¶ 3.23; Mancuso Decl. ¶ 20) and told Progressive

4  on May 24, 2019, that he no longer possessed any part of the Jeep (Compl. ¶ 3.26).

5        The Policy provides up to $500,000.00 in UMBI coverage for injuries caused by

6  an "underinsured motor vehicle" (Compl. ¶ 3.32; Policy at 3), including a phantom

7  vehicle "when the facts of the accident can be corroborated by competent evidence other

8  than the named insured's testimony" (Compl. ¶ 4.5; Policy at 17).  The Policy also

9  contains a cooperation clause, which states that a person seeking coverage must

10  "[c]ooperate with [Progressive] in any matter concerning a claim or lawsuit," including

11  by allowing Progressive to inspect damaged vehicles and take sworn statements from

12  policyholders.  (Compl. ¶ 3.34; Policy at 31.)

13        In its present motion for a default judgment, or in the alternative, for summary

14  judgment, Progressive seeks a declaration that it does not owe Mr. Rueger any UMBI

15  coverage for his injuries because he failed to cooperate with its investigation and was

16  solely at fault for the accident.  (*See* Mot. at 14-19; *see also* Compl. ¶¶ 3.2, 4.4-4.7,

17  6.2-6.3.)  The court now considers Progressive's motion.

### III. ANALYSIS

19        As discussed below, the court grants Progressive's motion for default judgment

20  and also concludes, in the alternative, that Progressive is entitled to the declaration it

21  seeks on summary judgment.

22  //

**A.     Motion for Default Judgment**

The court first considers whether Progressive is entitled to the declaration it seeks on default judgment.

    1.  Standards for Default Judgment

Obtaining a default judgment is a two-step process.  First, if a party fails to appear, the clerk must enter that party's default.  Fed. R. Civ. P. 55(a).  Second, upon a party's request or motion, the court may grant default judgment.  Fed. R. Civ. P. 55(b)(2); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Default judgment is only appropriate if the well-pleaded factual allegations of the complaint are "sufficient to establish [a] plaintiff's entitlement to a judgment under the applicable law." *TransAmerica Life Ins. Co. v. Young*, No. 2:14-cv-2314 MCE AC, 2015 U.S. Dist. LEXIS 139320, at *4 (E.D. Cal. Oct. 13, 2015) (citing *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 855 (9th Cir. 2007)); *see also UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019).  To determine the plaintiff's entitlement to judgment, "[t]he court must accept all well-pled allegations of the complaint as established fact, except allegations related to the amount of damages." *UN4*, 372 F. Supp. 3d at 1133 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

If the complaint is sufficient, the court decides whether to grant default judgment by considering the seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  They are:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material

facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

In this case, Progressive asserts that it is entitled to a declaratory judgment that it owes no UMBI coverage to Mr. Rueger on two grounds:  (1) that Mr. Rueger breached his duty to cooperate with Progressive's investigation; and (2) that Mr. Rueger was solely at fault for the accident and failed to provide sufficient evidence under the Policy that another driver was involved. (Mot. at 2.)  The court first considers whether Progressive is entitled to the declaratory judgment it seeks based on the well-pleaded allegations of its complaint. *See infra* §§ III.A.2-3.  If the well-pleaded allegations establish Progressive's entitlement to a declaratory judgment, the court next considers the seven *Eitel* factors to determine whether to grant default judgment. *See infra* § III.A.4.

    2. <u>Whether Mr. Rueger Failed to Cooperate with Progressive's Investigation</u>

In Washington, "[a]n insured's breach of a cooperation clause releases the insurer from its responsibilities if the insurer was actually prejudiced by the insured's breach." *Tran v. State Farm Fire & Cas. Co.*, 961 P.2d 358, 365 (Wash. 1998).  "Interference with the insurer's ability to evaluate and investigate a claim may cause actual prejudice." *Id.* However, "the insurer's requests for information must be material to the circumstances giving rise to liability on its part." *Id.* at 363 (citing *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 950 P.2d 479, 483 (Wash. Ct. App. 1997)).  In *Tran*, an electronics repairman breached his duty to cooperate with his insurer after his business was allegedly burglarized because he refused to provide evidence of his financial records, which were

"relevant and material" to the insurer's investigation into potential fraud.  961 P.2d at 367.  The *Tran* court concluded that "[b]ecause, in the final analysis, it is uncontroverted that [the insured's] intransigence prevented [the insurer] from completing a legitimate investigation in order to determine whether or not coverage should be provided, it follows that [the insurer] suffered prejudice." *Id.* at 366.

Progressive's complaint alleges that Mr. Rueger failed to cooperate with requests to inspect the Jeep (Compl. ¶¶ 3.23, 3.26, 3.29) and for documentation supporting a phantom vehicle or hit-and-run incident since his deposition on January 22, 2019 (*id.* ¶¶ 3.27-3.28, 4.6).  Progressive was "unable to identify any damage caused by the alleged hit-and-run vehicle" based on the photos Mr. Rueger took in 2017 (*id.* ¶ 3.13) and has no way of inspecting the Jeep now that Mr. Rueger has discarded it (*see id.* ¶¶ 3.21, 3.26). The Policy requires persons seeking coverage to cooperate in "any matter concerning a claim or lawsuit."  (*Id.* ¶ 3.34; Policy at 31.)  Progressive's requests to inspect Mr. Rueger's Jeep and for evidence supporting his claim are material and relevant because Progressive opened the UMBI claim to investigate an alleged phantom car or hit-and-run incident.  (*See* Compl. ¶ 3.12.)

Progressive's allegations establish that the company has been prejudiced by Mr. Rueger's lack of cooperation because he discarded the Jeep before Progressive could inspect it and failed to provide any evidence that another car caused the accident, preventing Progressive from adequately investigating the UMBI claim.  *See Tran*, 961 P.2d at 366-67 (concluding that an insured's failure to cooperate prejudiced the insurer when the insured's failure prevented the insurer from completing its coverage

1 investigation).  Thus, the court concludes based on the well-pleaded allegations of the
2 complaint that Progressive is entitled to a declaration that it does not owe Mr. Rueger
3 UMBI coverage.

3. <u>Whether There Is Sufficient Evidence Another Car Caused the Accident</u>

Progressive opened the UMBI claim because Mr. Rueger told the company another car caused the accident.  (Compl. ¶ 3.12.)  Under the Policy, Progressive owes coverage for injuries caused by an "underinsured motor vehicle," including a phantom vehicle "when the facts of the accident can be corroborated by competent evidence other than the named insured's testimony."  (*Id.* ¶ 4.5; Policy at 17.)  If there is no additional evidence that another car caused the accident, then Progressive does not owe Mr. Rueger UMBI coverage.  (*See* Compl. ¶¶ 4.4-4.6; *see generally* Policy.)

Progressive's complaint alleges that "[t]here is no evidence that another car was involved in the subject accident."  (Compl. ¶ 3.2.)  Although Mr. Rueger testified that another car caused the accident (*id.* ¶ 3.22; Rueger Dep. at 20:3-6, 23:7-14), a witness saw Mr. Rueger driving with his lights off before colliding with the guardrail (Compl. ¶ 3.4; *see* Mancuso Decl. ¶ 2, Ex. 1 ("Witness Statement")), and Mr. Rueger was arrested for driving while intoxicated after the accident and pleaded guilty to this offense (Compl. ¶¶ 3.7-3.8; *see also* Plea).  Moreover, except for Mr. Rueger's own testimony, nothing in the record indicates that there is any evidence that another car caused the accident (*see* Compl. ¶¶ 3.27-3.28, 4.6, 4.9; *see generally* Dkt.), and Mr. Rueger did not allow Progressive to inspect his Jeep before discarding it (*id.* ¶¶ 3.21, 3.23, 3.26, 3.29).

//

1      Thus, based on the well-pleaded allegations of the complaint, the court concludes

2 that Progressive is entitled to a declaration that it does not owe Mr. Rueger UMBI

3 coverage because there is no evidence aside from his own testimony that another car

4 caused the accident, which is insufficient to establish a UMBI claim under the Policy.

5      4.   Whether the *Eitel* Factors Weigh in Favor of Default Judgment

6      Having concluded that the well-pleaded allegations in the complaint establish

7 Progressive's entitlement to a declaration that it is not liable to Mr. Rueger under the

8 Policy on two separate grounds, *see supra* § III.A.2-3, the court now considers the *Eitel*

9 factors to decide whether to exercise its discretion to grant default judgment for

10 Progressive.  *See Eitel*, 782 F.2d at 1471-72.

11      *a.   Factor One:  Possibility of Prejudice*

12      Given Mr. Rueger's apparent disinterest in resolving the UMBI claim, Progressive

13 has "no other recourse to secure a ruling regarding its liability" absent a default

14 judgment.  *Colony Ins. Co. v. Thomas*, No. CV 10-04218 MMM (SHx), 2011 U.S. Dist.

15 LEXIS 162730, at *9 (C.D. Cal. Jan. 24, 2011).  Specifically, Progressive "will be unable

16 to determine its obligations" to Mr. Rueger under the Policy without a grant of default

17 judgment.  *Id.*  Thus, the first *Eitel* factor favors default judgment.

18      *b.   Factors Two and Three:  Merits and Sufficiency of the Complaint*

19      The second and third *Eitel* factors are often considered together.  *See Curtis v.*

20 *Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014); *Colony*, 2011

21 U.S. Dist. LEXIS 162730, at *10.  These factors "require that a plaintiff state a claim on

22 which [it] may recover."  *Colony*, 2011 U.S. Dist. LEXIS 162730, at *10 (quoting

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)); *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The well-pleaded allegations in the complaint establish that Progressive does not owe Mr. Rueger UMBI coverage because Progressive has been prejudiced by Mr. Rueger's lack of cooperation and because there is no evidence aside from Mr. Rueger's self-serving testimony that another car caused the accident. *See supra* §§ III.A.2-3. Thus, the second and third *Eitel* factors favor default judgment because Progressive's complaint sufficiently establishes that it does not owe Mr. Rueger UMBI coverage.

        *c. Factor Four: Sum of Money at Stake*

Although Progressive is not seeking damages, it is requesting a declaration that it is not liable to Mr. Rueger for up to $500,000.00 due to injuries he suffered from the accident. The exact amount of Mr. Rueger's medical bills is unknown, and he has made no effort to introduce evidence of his losses. (*See generally* Dkt.) Even if Mr. Rueger's medical bills are large, Progressive has established that it does not owe Mr. Rueger UMBI coverage. Thus, this factor is neutral and does not affect the outcome of the motion.

        *d. Factor Five: Possibility of a Dispute Concerning Material Facts*

With the court's permission, Progressive served both Mr. Rueger and Ms. Rueger by mail. (*See* Aff. ¶ 3; *see also* 10/25/19 Order.) Nevertheless, they have failed to appear before the court or indicate any intent to contest Progressive's suit. (*See generally* Dkt.) Thus, any factual disputes would arise from Progressive's own filings. Although Progressive indicates that Mr. Rueger claims another vehicle was involved in the accident

1  (Compl. ¶ 3.11, 3.22), the only evidence that supports the involvement of a second

2  vehicle is Mr. Rueger's deposition testimony (*see* Rueger Dep. at 20:3-6, 23:7-14).

3  However, the Policy requires Mr. Rueger to produce evidence beyond his own testimony

4  to corroborate the existence of a phantom vehicle. (*See* Policy at 17.) Without additional

5  evidence, Mr. Rueger's testimony alone does not itself create a dispute of material fact

6  concerning his right to UMBI coverage. The remaining evidence uniformly indicates that

7  Mr. Rueger caused the accident. Thus, the fifth *Eitel* factor favors default judgment.

8     *e. Factor Six: Whether Default Was due to Excusable Neglect*

9  Before mailing the summons and complaint to Mr. Rueger and Ms. Rueger,

10 Progressive struggled to serve either party. At one point, a "hostile John Doe with a large

11 riding lawn mower" chased Progressive's third-party process server off Mr. Rueger's

12 property. (10/15/19 Neal Decl. ¶ 7, Ex. C.) The process server determined that the

13 property was a "[h]ostile environment" during a subsequent attempt to serve the

14 complaint after noticing several dogs roaming free outside of Mr. Rueger's home. (*Id.*

15 ¶ 8, Ex. D.) Given the difficulty Progressive had serving Mr. Rueger and Ms. Rueger and

16 their complete failure to respond to the complaint, the court concludes that the default

17 was not due to any excusable neglect on Mr. Rueger or Ms. Rueger's part. Thus, this

18 factor also supports default judgment.

19    *f. Factor Seven: Policy Favoring Decisions on the Merits*

20 When a defendant fails to answer a plaintiff's complaint, "the seventh *Eitel* factor

21 does not preclude the entry of default judgment." *Colony*, 2011 U.S. Dist. LEXIS

22 162730, at *26. Although policy favors decisions on the merits, the court "may consider

Defendants' failure to respond . . . as admissions that the motions have merit." *UN4*, 372 F. Supp. 3d at 1134 (citing Local Rules W.D. Wash. LCR 7(b)(2)). "Moreover, [a] [d]efendant's failure to answer [a] [p]laintiff's [c]omplaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Mr. Rueger has failed to respond to the complaint, this factor does not prevent the court from granting default judgment for Progressive.

       *g. Conclusion on the Eitel Factors*

The majority of the *Eitel* factors favor granting Progressive default judgment against Mr. Rueger and Ms. Rueger. Although there is a potentially a large sum of money at stake, there is no evidence of Mr. Rueger's medical bills and, even if there were, Progressive still would not owe him UMBI coverage because of his failure to cooperate and the insufficiency of evidence to support his claim that another car caused the accident. Thus, the court GRANTS Progressive's motion for default judgment.

**B.  Motion for Summary Judgment**

Although the court grants Progressive's motion for default judgment, Progressive is also entitled in the alternative to the declaration it seeks on summary judgment.

    1.  <u>Standards</u>

District courts may not grant summary judgment "simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist." *Cristobal v. Siegal*, 26 F.3d 1488, 1491 (9th Cir. 1994). Summary judgment should only be granted if the movant shows "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is "material" if it "might affect the outcome of the suit." *Anderson*, 477 U.S. 242 at 248. The court may consider material facts to be undisputed and grant unopposed summary judgment if the nonmoving party fails to respond, Fed. R. Civ. P. 56(e)(2), but unopposed summary judgment is improper if "the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact," *United States v. Real Prop. Located at Incline Vill.*, 47 F.3d 1511, 1520 (9th Cir. 1995) (quoting (*Henry v. Gill Indus., Inc.*, 983 F.2d at 949)). If there is "sufficient evidence supporting the claimed factual dispute . . . [that] require[s] a jury or judge to resolve the parties' differing versions of the truth at trial," the moving party is not entitled to summary judgment. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

In this case, the Clerk of the Court entered Mr. Rueger and Ms. Rueger's default on January 30, 2020. (Dflt. Order at 2.) Thus, when deciding whether Mr. Rueger breached his duty to cooperate and was solely at fault for the accident, the court considers the undisputed facts in Progressive's declarations and exhibits. If the undisputed facts show that Progressive is entitled to judgment as a matter of law, the court may grant summary judgment for Progressive.

2. <u>Whether Mr. Rueger Failed to Cooperate with Progressive's Investigation</u>

As noted above, in Washington, "[a]n insured's breach of a cooperation clause releases the insurer from its responsibilities if the insurer was actually prejudiced by the insured's breach." *Tran*, 961 P.2d at 365. Further, "[i]nterference with the insurer's

ability to evaluate and investigate a claim may cause actual prejudice." *Id.*; *see supra* § III.A.2.

Mr. Rueger has not complied with Progressive's "requests for objective documentation supporting (1) the existence of a hit-and-run vehicle and (2) that the actions of the hit-and-run driver are legally responsible for injuries sustained." (Mancuso Decl. ¶ 18; *see also* Letters.) Further, Mr. Rueger has not complied with Progressive's "request for identification of damage caused by the hit-and-run vehicle" (Mancuso Decl. ¶ 19, Ex. 9) and Progressive's "request to inspect any part of his vehicle involved in the subject accident" (*id.* ¶ 20; *see also* Letters). Progressive "was unable to identify any damage caused by the alleged hit and run vehicle" from Mr. Rueger's photos (Mancuso Decl. ¶ 17) and now cannot inspect the Jeep (*see id.* ¶ 20).

The Policy requires persons seeking coverage to cooperate with Progressive in "any matter concerning a claim or lawsuit." (Policy at 31.) Progressive's requests to inspect Mr. Rueger's Jeep and for evidence supporting his claim are material and relevant because Progressive opened the UMBI claim to investigate an alleged phantom car or hit-and-run incident. (Mancuso Decl. ¶ 16.) There is no evidence to suggest that Mr. Rueger complied with these requests. (*See generally* Dkt.) Thus, there is no genuine issue of material fact as to whether Mr. Rueger cooperated with Progressive's investigation after his deposition, and the only remaining question is whether Progressive was prejudiced by Mr. Rueger's lack of cooperation.

Progressive has been unable to process Mr. Rueger's UMBI claim because he failed to provide the company with documentation supporting his narrative or allow an

1  expert to inspect the Jeep before discarding it.  (*See* Mancuso Decl. ¶¶ 17-20.)

2  Progressive cannot process Mr. Rueger's UMBI claim if it cannot determine whether a

3  phantom car or hit and run caused the accident.  Thus, Mr. Rueger's failure to cooperate

4  prejudiced Progressive.  *See Tran*, 961 P.2d at 366-67 (concluding that because

5  uncontroverted evidence established that the insured's intransigence prevented the insurer

6  from completing a legitimate coverage investigation, the insurer suffered prejudice).

7  　　　　Based on the foregoing analysis, the court concludes that Progressive is entitled on

8  summary judgment to a declaration that it owes no UMBI coverage to Mr. Rueger under

9  the Policy due to his breach of the Policy's cooperation clause.

10  　　　　3.　<u>Whether There Is Sufficient Evidence Another Car Caused the Accident</u>

11  　　　　Under the Policy, Progressive owes coverage for injuries caused by an

12  "underinsured motor vehicle," including a phantom vehicle "when the facts of the

13  accident can be corroborated by competent evidence other than the named insured's

14  testimony."  (Policy at 17.)  If there is no evidence that another car caused the accident,

15  then Progressive does not owe Mr. Rueger UMBI coverage.  (*See id.*)

16  　　　　Progressive's evidence overwhelmingly indicates that Mr. Rueger was solely at

17  fault for the accident because he was driving under the influence without headlights on

18  before swerving into the guardrail.  (*See* Mancuso Decl. ¶ 17; Police Report; Plea;

19  Witness Statement.)  Although Progressive's complaint states that there is "no evidence"

20  another car was involved in the accident (Compl. ¶ 3.2), Mr. Rueger testified under oath

21  that a pickup truck ran him into the guardrail (Rueger Dep. at 20:3-6, 23:7-14).

22  However, Mr. Rueger's deposition is not material to the outcome of this dispute because

the Policy requires evidence beyond the insured's testimony in claims involving phantom vehicles (*see* Policy at 17) and there is no evidence other than Mr. Rueger's testimony of a hit and run (*see* Mancuso Decl. ¶ 17). Thus, there is no genuine issue of material fact that would prevent the court from granting summary judgment to Progressive on this issue either, and Progressive is therefore entitled to a declaration that it owes no UMBI coverage to Mr. Rueger under the Policy on this ground as well.

## IV.  CONCLUSION

For the reasons set forth above, the court GRANTS Progressive's motion for default judgment, or in the alternative, summary judgment against Mr. Rueger and Ms. Rueger (Dkt. # 12). The court hereby enters a DECLARATORY JUDGMENT that Progressive does not owe Mr. Rueger and Ms. Rueger UMBI coverage for injuries Mr. Rueger sustained during the January 20, 2017, car accident involving Mr. Rueger's 1999 Jeep Grand Cherokee under Automobile Policy No. 71505242, which was in effect from December 24, 2016, to June 24, 2017.

Dated this 10th day of June, 2020.

JAMES L. ROBART
United States District Judge